## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| FAH LIQUIDATING CORP., *et al.*, | ) |
| (f/k/a FISKER AUTOMOTIVE HOLDINGS, INC.), | ) Case No. 13-13087(KG) |
| | ) |
| Debtors. | ) |
| EMERALD CAPITAL ADVISORS CORP., | ) |
| AS TRUSTEE FOR THE FAH LIQUIDATING TRUST, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Adv. Pro. No. 16-51528(KG) |
| | ) |
| KARMA AUTOMOTIVE LLC and | ) |
| WANXIANG CLEAN ENERGY USA LLC, | ) |
| | ) |
| Defendant. | ) **Re:  Dkt No. 20** |

## OPINION

In this adversary proceeding there are two issues for the Court to decide.  First,

does the Court have "arising in" or "related to" jurisdiction and, second, should the Court

abstain from deciding the case.  The parties have briefed and argued the issues.

On a Rule 12(b)(1) motion to dismiss, the Court accepts as true the plaintiff's

factual allegations in the Complaint.  *Petruska v. Gannon University*, 462 F. 3d 294, 299 (3d

Cir. 2006).  A motion to dismiss under Rule 12(b)(1) is an objection to the federal court's

power to adjudicate a case.  *Id.* at 302; and *Democracy Rising PA v. Celluci*, 603 F. Supp. 2d

780, 788 (M.D. Pa. 2009).  The plaintiff has the burden of persuading the court it has

jurisdiction.  *Kehr Packages v. Fidelcor, Inc.*, 926 F. 2d 1406, 1409 (3d Cir. 1991) ("When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion.")

A Rule 12(b)(1) "facial" challenge contests the sufficiency of the Complaint. *Common Cause of Pa. v. Pennsylvania*, 558 F. 3d 249, 256-58 (3d Cir. 2009).  The court assumes that the allegations in the Complaint are true but examines the pleadings to determine if they present a case within the court's jurisdiction.  *Democracy Rising*, 603 F. Supp. 2d at 788.

A "factual" attack on jurisdiction argues that the pleadings satisfy a finding that jurisdiction exists, but that the allegations are false, thereby taking the case outside the court's jurisdiction.  *Id.*; *Mortensen v. First Federal Sav. and Loan Ass'n*, 549 F. 2d 884, 891 (3d Cir. 1977).  In the instant case, the Court considers the 12(b)(1) motion to be a facial attack on the Court's subject matter jurisdiction.

## FACTS[1]

Fisker Automotive Holdings, Inc. and Fisker Automotive, Inc. (collectively, the "Debtors") filed for Chapter 11 bankruptcy protection in the Court on November 22, 2013 (the "Petition Date").  Compl. §§ 2, 10.  Before the Petition Date, the Debtors had been

---

[1]  Emerald Capital Advisors Corp. (the "Trustee") for the FAH Liquidating Trust (the "Trust") brings this adversary proceeding.  The Trust was formed in the Plan discussed within.

engaged in designing, assembling and manufacturing plug-in hybrid electric cars.  *Id.* ¶ 10.

The Court will not repeat the interesting history of the case.[2]  For purposes of the present dispute, it is sufficient to note that the Debtors conducted an auction of substantially all of their assets from February 12 through 14, 2014, at which there were two bidders:  Wanxiang Clean Energy USA LLC ("Wanxiang") and Hybrid Technology LLC ("Hybrid").  *Id.* ¶ 14.

When the auction ended, Debtors and the Official Committee of Unsecured Creditors (the "Committee") jointly determined that Wanxiang's final bid was the highest and best bid.  *Id.* ¶ 15.  Wanxiang's winning bid was $149.2 million comprised of the following:  $126.2 million in cash, $8 million of assumed liabilities, and a 20% equity interest in a company to be formed and that would own the assets that Wanxiang was acquiring.  *Id.* ¶ 15.  The Court will refer to the 20% interest as the "Equity Consideration." Wanxiang's winning bid was thereafter included in an asset purchase agreement between Debtors and Wanxiang (the "Purchase Agreement").  *Id.*

On February 19, 2014, the Court approved the sale to Wanxiang pursuant to the terms of the Purchase Agreement (the "Sale Order") (D.I. 653).  *Id.* at 16.  The Debtors and Wanxiang closed the sale transaction on March 24, 2014.  *Id.*

---

[2]  For a sense of what happened in the case, see Memorandum Opinion, dated January 17, 2014.  D.I. 483.

Pursuant to the Sale Order, on March 21, 2014, Wanxiang and Fisker created Karma Automotive LLC ("Karma") (Wanxiang and Karma will be referred to collectively as the "Defendants") by entering into a limited liability company agreement (the "LLC Agreement"). *Id.* ¶ 17. The Debtors received 200 Common Units and 200 Series B Preferred Units which represented a 20% interest in Karma. *Id.* ¶ 18. The LLC Agreement provided that any transfer to the Trust would be an exempt transfer, thereby recognizing that the Equity Consideration would ultimately be transferred to the Trust. When the Plan Settlement Term Sheet was negotiated, it provided that all of the Equity Consideration was to be contributed to the Trust. *Id.* ¶ 4. On July 28, 2014, the Court entered an Order confirming Debtors' Second Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code (the "Plan"). *Id.* ¶ 31, D.I. 1137, Exhibit A.

The Court is not addressing the merits of the adversary proceeding but, rather, whether or not the Court has jurisdiction to address the merits and, if it has jurisdiction, should the Court abstain. Therefore, it is sufficient for the Opinion for the Court to find that Karma has issued additional units to Wanxiang. Karma issued Series A preferred and common units in exchange for capital contributions. The issuances occurred on September 6, October 7, November 8 and December 12, 2016. The Trust objected to the issuance of common units to Wanxiang. *Id.* ¶¶ 38-39, 48, 50. The Trustee commenced the adversary proceeding on November 30, 2016, alleging five counts:

4

Count I – declaratory relief under 28 U.S.C. § 2201, alleging that Karma did not have authority under the LLC Agreement to issue additional common units to Wanxiang.

Count II – breach of fiduciary duties to the Trust, which Karma aided and abetted.

County III – violation of the Plan by Wanxiang and Karma.

Count IV – breach of Karma and Wanxiang of the implied covenant of good faith and fair dealing.

Count V – promissory estoppel based on Wanxiang's promise of the 20% Equity Consideration.

## DISCUSSION

Wanxiang and Karma have moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 2012(b).  In the alternative, Wanxiang and Karma ask the Court to abstain under 28 U.S.C. § 1334(c)(1) and allow the Trust's claims to proceed in a state forum.  The Court is satisfied that it has subject matter jurisdiction and it will not abstain from deciding the case.

### Subject Matter Jurisdiction

"The source of the bankruptcy courts' jurisdiction is 28 U.S.C. §§ 1334 and 157." *Binder v. Price Waterhouse & Co., LLP* (*In re Resorts Int'l, Inc.*), 372 F.3d 154, 161 (3d Cir. 2004), quoting *United States Brass Corp. v. Travelers Ins. Group, Inc.* (*In re United States Brass Corp.*), 301 F.3d 296, 303 (5th Cir. 2002).  Section 1334(b) provides in relevant part, that "the district courts shall have original but not exclusive jurisdiction of all civil

proceedings arising under title 11, or arising in or related to cases under title 11." Section

157(a) then provides that district courts may refer to bankruptcy judges "any or all cases

under title 11 and any or all proceedings arising under title 11 or arising in or related to

a case under title 11 . . . ." "Bankruptcy court jurisdiction potentially extends to four types

of title 11 matters, pending referral from the district court: '" (1) cases under title 11, (2)

proceeding[s] arising under title 11, (3) proceedings arising in a case under title 11, and

(4) proceedings related to a case under title 11."' *Resorts*, 372 at 162, *citing Torkelson v.*

*Maggio* (*In re Guild & Gallery Plus*), 72 F. 3d 1171, 1175 (3d Cir. 1996) (*quoting In re Marcus*

*Hook Dev. Park, Inc.*, 943 F. 2d 261, 264 (3d Cir. 1991). The question for the Court in this

case is whether the Trust's Complaint "arises in" or is "related to" a title 11 case[3].

    The case law makes it clear that "arising in" jurisdiction is for "claims that by their

nature, not their particular factual circumstance, could only arise in the context of a

bankruptcy case." *Stoe v. Flaherty*, 436 F. 3d 209, 218 (3d Cir. 2007). *See also Geruschat v.*

*Ernst Young LLP* (*In re Seven Fields Dev. Corp.*), 505 F. 3d 237, 260 (3d Cir. 2007). Such a

matter is a core proceeding "that by its nature could only arise in the context of a

bankruptcy case." *Resorts*, 372 F. 3d at 162.

    Here, the Complaint alleges in large part that the Defendants, by diluting the

Trust's interest below 20%, has violated the Plan and the spirit of the Plan. The Plan

---

[3] "Arising in" cases are core. "Related to" cases are non-core and the Court is limited to submitting proposed findings of fact and conclusions of law. *In re Exide Techs.*, 544 F.3d 196, 205 (3d Cir. 2008).

provides throughout for: the "Equity Consideration" having the "meaning set forth in the Purchase Agreement" (Plan at 5); the "Liquidating Trust Assets" meaning – or including – "the Equity Consideration" (Plan at 8); the "LLC Agreement," "setting forth the terms for, among other things the Equity Consideration" (Plan at 8); the "Plan Supplement" including "the LLC Agreements" (Plan at 9); "Sale Transaction" meaning the "transaction between the Debtors and [Wanxiang] as set forth in the Purchase Agreement" (Plan at 11); Debtors "transferring to the Liquidating Trust all of their rights, title, and interests in all of the Liquidating Trust Assets" (Plan at 22); and the "Liquidating Trust [causing] the Equity Consideration to be held in a wholly – owned subsidiary of the Liquidating Trust or in a separate entity selected by the Liquidating Trustee to hold such Equity Consideration solely for the benefit of Beneficiaries to the extent provided by the LLC Agreement" (Plan at 32).

"Related to" jurisdiction is described in *Pacor, Inc. v. Higgins*, 743 F. 2d 984, 994 (3d Cir. 1984), as follows:

> [T]he proceeding need not necessarily be against the debtor or against the debtor's property.  An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

At the same time, after confirmation bankruptcy courts should only exercise jurisdiction where a claim has "a close nexus to the bankruptcy plan" and the matter at issue "affects the interpretation, implementation, consummation, execution, or administration of a

confirmed plan or incorporated litigation trust agreement." *Resorts*, 372 F. 3d at 168-69. A court may find a close nexus where the plan specifically enumerates the causes of action. *Id.*

## Analysis

In *Seven Fields*, creditors alleged that Ernst & Young had committed malpractice in asserting incorrectly, and among other matters, that the debtor was insolvent. As a result, the debtor's assets were allegedly sold at below market values. In the adversary case, the bankruptcy court's jurisdiction was at issue. The Third Circuit agreed with the bankruptcy court and the district court. "Arising in" jurisdiction over the malpractice action existed because the claims "could only arise in the context of a bankruptcy case." *Seven Fields*, 505 F. 3d at 260, quoting *Stoe*, 436 F. 3d at 218. The *Seven Fields* court distinguished the case from *Resorts* (where the Third Circuit had found bankruptcy court jurisdiction did not exist) because (1) the claims arose pre-confirmation, and (2) the alleged malpractice "implicated the integrity of the entire bankruptcy process." *Resorts*, 372 F. 3d at 163.

In *In re Donaldson v. Bernstein*, 104 F. 3d 547 (3d Cir. 1997), the Third Circuit also recognized the bankruptcy court's jurisdiction over state law claims based upon the integrity of the bankruptcy process. The trustee brought an action against the debtor's two principals who knew they would not perform on their obligations to fund the plan.

The Third Circuit found that there was subject matter jurisdiction because of the potential of misconduct during the bankruptcy case. *Id.* at 553.

Here, as in *Seven Fields* and *In re Southmark Corp.*, 163 F. 3d 925, 931 (5th Cir. 1999)[4], the claims are "inseparable from the bankruptcy context." First, the Court approved Wanxiang's purchase of the Debtors' assets for a price which included the Equity Consideration. Purchase Agreement and Order, dated February 19, 2014, D.I. 653. Next, the Plan contains many references to the Purchase Agreement, the Trust and the LLC Agreement. It is clear to the Court that the claims which the Trustee makes in the Complaint are inseparable from the Plan and are therefore inseparable from the bankruptcy case itself.

The Defendants cite *In re Solyndra, LLC*, 2015 WL 6125246 (Bankr. D. Del. Oct. 16, 2015) as "instructive." In *Solyndra*, Global Kato HF, LLC ("Global Kato") and Maxtor Corporation ("Maxtor") were parties to a lease agreement. Maxtor assigned its rights as tenant to Seagate Technology (US) Holdings, Inc. ("Seagate"), which in turn subleased the premises to debtor. During the bankruptcy case, Global Kato and Seagate stipulated with debtor to authorize rejection of the lease. Global Kato agreed to credit Seagate up to a specified amount for any claims it might have that related to debtor's occupancy. Seagate then sued Global Kato in bankruptcy court.

---

[4] In *Southmark*, the Fifth Circuit reversed both the bankruptcy court and the district court and held that jurisdiction over a malpractice action existed. The basis for this holding was the inseparability of the malpractice claims from the bankruptcy context.

The *Solyndra* court held that it did not have subject matter jurisdiction because the rights and obligations at issue were rooted in a pre-petition document to which the debtor was not a party. The court wrote that even if the claims Seagate raised "factually flowed from rights granted under the Stipulation," (i*d.* at *3) those claims could be brought in a non-bankruptcy forum. The court also found that it did not have "related to" jurisdiction and the reservation of jurisdiction contained in the plan alone could not confer jurisdiction.

The case *sub judice* is different than *Solyndra* or cases like it. Here, the Trustee is basing claims on rights that flow from the Plan and from the Purchase Agreement which the Court approved. The Trustee's claims for the purpose of the motion to dismiss for lack of subject matter jurisdiction calls into play the integrity of the bankruptcy process. *Solyndra* did not.

The Court therefore finds that it has "arising in" jurisdiction over the allegations the Trustee raises in the Complaint. The Trustee alleges that the Defendants are violating the Purchase Agreement, the LLC Agreement and the Plan by diluting the Equity Consideration. As such, the Complaint raises issues that relate to the integrity of the bankruptcy process. *Seven Fields* and *Southmark* among other cases affirm jurisdiction under such circumstances.

If the Court does not have "arising in" jurisdiction, it surely has "related to" jurisdiction. The Third Circuit recognizes that "jurisdiction may be problematic" after

confirmation because the debtor's estate then ceases to exist. *Resorts*, 372 F. 3d at 165. Yet, "when a matter affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan or incorporated litigation trust agreement, retention of post-confirmation bankruptcy court jurisdiction is normally appropriate." *Id.* at 168-69. Under such circumstances a "close nexus" exists and there is "related to" jurisdiction. *Id.* at 167.

There is little question that there is a close nexus between the Complaint and the bankruptcy case, including the Plan. The Equity Consideration is the subject matter of the Complaint, and the Equity Consideration is a subject of the Purchase Agreement which the Court approved in the bankruptcy case, and also of the Plan which the Court confirmed in the same case. The Equity Consideration certainly affects the implementation, consummation, and administration of the Plan. Clearly then "related to" jurisdiction exists.

It is important to separate jurisdiction from the merits of the case. The Court finds that it has jurisdiction based upon the relationship of the Purchase Agreement, the LLC Agreement and the Plan to the Complaint. However, the Court is mindful that, as stated in the Plan, "[t]he Liquidating Trust shall hold the Equity Consideration subject to the terms and conditions set forth in the LLC Agreement . . . ." Plan at 32. When the merits of the Trust's case are before the Court, the terms and conditions of the LLC Agreement, as well as the Purchase Agreement and the Plan, will be germane. The Court is also aware

that (1) the capital contributions giving rise to the adversary proceeding occurred more than three years after the Court confirmed the Plan, (2) capital contributions may be necessary to sustain Karma and (3) the 20% Equity Consideration was at one time valued at $15 million, but whether the value was somehow locked-in has to be determined.

### Abstention

Section 1334(c)(1) provides that nothing prevents the Court from abstaining from hearing a case which arises under the Bankruptcy Code or arises in or relates to a bankruptcy case. The Defendants have asked the Court to abstain permissively from hearing the adversary proceeding if it denies dismissal. As the Court indicated previously, the Court does not find that abstention is appropriate in this case.

Courts look to a twelve-factor test to analyze permissive abstention. A bankruptcy court's evaluation of these factors is not a mathematical exercise, and the decision of the court on permissive abstention is left to the bankruptcy court's broad discretion. *TransWorld Airlines, Inc. v. Karabu Corp.* (*In re TransWorld Airlines, Inc.*) 196 B.R. 711, 715 (Bankr. D. Del. 1996); *Republic Underwriters Ins. Co. v. DBSI Republic, LLC* (*In re DBSI, Inc.*), 409 B.R. 720, 729 (Bankr. D. Del 2009). The factors are:

(1) the effect or lack thereof on the efficient administration of the estate;

(2) the extent to which state law issues predominate over bankruptcy issues;

(3) the difficulty or unsettled nature of the applicable state law;

(4) the presence of a related proceeding commenced in state court or other non-bankruptcy court;

(5) the jurisdictional basis, if any, other than section 1334;

(6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(7) the substance rather than the form of an asserted "core" proceeding;

(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with the enforcement left to the bankruptcy court;

(9) the burden on the court's docket;

(10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(11) the existence of a right to a jury trial; and

(12) the presence of non-debtor parties.

*See, e.g., In re Fruit of the Loom, Inc.*, 407 B.R. 593, 599-600 (Bankr. D. Del. 2009).  It is clear to the Court that these factors weigh heavily against abstention.

1.    Effect on administration of the bankruptcy estate.  The Defendants are correct that the Court confirmed the Plan more than two years ago and Debtors' estate no longer exists.  However, in the Complaint the Trustee is seeking interpretation and enforcement of the Plan.  Advantage – no abstention.

2 & 3. State law issues predominate, and the difficulty or unsettled nature of applicable law.  Once again, although at first blush it appears that the interpretation of the LLC Agreement is a question of state law, the question the Complaint raises is the

interpretation of the Plan.  Further, Delaware law is not unsettled on the issue. Advantage – no abstention.

4.      Presence of related proceeding.  There are no other cases pending on the issues raised in the Complaint.  Advantage – no abstention.

5.      Jurisdictional basis other than 28 U.S.C. § 1334.  The Trustee would argue that because the adversary proceeding implicates the integrity of the bankruptcy process, the Court's jurisdiction is invoked.  Advantage – no abstention.

6.      Degree of relatedness or remoteness of the proceeding to the main case.  As noted, the adversary proceeding calls into play the Purchase Agreement and the Plan. Advantage – no abstention.

7.      Substance rather than form of an asserted core proceeding.  The Court has already ruled that the matters raised in the Complaint are core matters.  Advantage – no abstention.

8.      Feasibility of severing state law claims.  It would not make sense to sever as the Plan issues are superior.  Advantage – no abstention.

9.      Burden on the Court's docket.  The adversary proceeding burdens the Court's docket, but not unfairly.  Advantage – even.

10.     Forum shopping.  There is no forum shopping by the Trustee.  The adversary proceeding as raised involves the Plan.  Advantage – no abstention.

11.    Right to jury trial.    The breach of fiduciary duty claim is triable to a Chancellor in the Delaware Court of Chancery.    Once the Court of Chancery has jurisdiction, it would decide all issues, including the breach of contract.  *Park Oil, Inc. v. Getty Refining & Marketing Co.*, 407 A.2d 533, 535 (Del. 1979).  Advantage – no abstention.

12.    The presence of non-debtor parties.  The parties are non-debtors.  The Trust, however, "maintain[s] a connection to the bankruptcy even after the plan has been confirmed."  *Street v. End of the Road Trust*, 386 B.R. 539, 545-46 (D. Del. 2008).  Advantage – no abstention.

The factors courts consider in deciding whether or not to abstain from hearing a case, when measured against the Complaint, militate against abstention.  Accordingly, in the exercise of its discretion the Court will not abstain.

## CONCLUSION

The parties briefed and argued the motion to dismiss or to abstain very well and professionally.  The Court carefully read the briefs and considered the arguments, and has decided that both the motion to dismiss and to abstain are to be denied.  An Order will be issued.

Dated:  February 16, 2017

KEVIN GROSS, U.S.B.J.